IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MSS, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 3:09-cv-00601 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| MASER CORPORATION, | ) | JURY DEMAND |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## ORDER

Pending before the Court is Plaintiff MSS, Inc.'s Motion to Dismiss Defendant Maser Corporation's Counterclaim ("Plaintiff's Motion") (Doc. No. 14), filed with an accompanying Memorandum in Support (Doc. No. 15). Defendant filed a Response in Opposition (Doc. No. 23), to which Plaintiff filed a Reply (Doc. No. 26). For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND[1]

Plaintiff is a Tennessee corporation whose principal place of business and headquarters are in Nashville, Tennessee. Plaintiff designs, engineers, and manufactures separation systems that allow for automated sorting of plastics, glass, paper and metals, among other material, for material recovery and recycling. Defendant is incorporated in Delaware and does business through and in conjunction with Maser Canada Inc. ("Maser Canada"), its wholly-owned subsidiary, located in Ontario, Canada. Maser Canada is also involved in the business of material separation and recovery.

---

[1] All facts are taken from Plaintiff's Amended Complaint (Doc. No. 9) and Defendant's Answer and Counterclaim (Doc. No. 13), unless otherwise noted.

On August 10, 2007, Plaintiff and Defendant entered into a written Limitation of Supply and Quotation Agreement ("Agreement") for Defendant to purchase a Metalsort machine from Plaintiff for the sorting of plastics and metals for material recovery and recycling. A representative of Defendant signed the Agreement in Massachusetts and returned the signed Agreement to Plaintiff in Nashville. Prior to signing the Agreement, Defendant's personnel were involved in the process of testing and evaluating the Metalsort's capabilities and suitability for Defendant's intended use and purpose. Defendant alleges that it nonetheless relied on the representations of Plaintiff regarding Plaintiff's capabilities to modify the Metalsort to accommodate Defendant's needs.

The Agreement contains terms regarding the guaranteed suitability of the Metalsort for Defendant's intended use. The Agreement also states that Plaintiff will not be responsible for consequential damages arising from the use or performance of the Metalsort. The warranty provision of the Agreement states:

> Purchaser agrees that [Plaintiff] will not be responsible for the costs of consequential labor costs, lost profits, down time, transportation charges or any other cost, charge or expense incurred by purchaser as a result of such defective product or part thereof. Purchaser also agrees that [Plaintiff] shall not be responsible for consequential damages or contingent liabilities arising from the use or performance of such product or part thereof.

The Metalsort was shipped to and installed in Maser Canada's facility in Ontario, Canada. Defendant alleges that in reliance on Plaintiff's expertise, skill, judgment and advice, it constructed and installed several structures and ancillary parts to function in conjunction with the Metalsort. Defendant alleges that the ancillary equipment functioned as required. Although Plaintiff was not required to design or manufacture a feed system for the Metalsort, Plaintiff was responsible for making the Metalsort work with Defendant's feed system. Plaintiff provided a technician and, later, an engineer to assist with the installation of the Metalsort, but after two

attempts, the Metalsort did not perform according to the removal efficiencies stated in the Agreement.

In an attempt to remedy the situation, Plaintiff made additional adjustments to the Metalsort and its ancillary parts. Plaintiff completed the modifications in August of 2008, but the Metalsort still did not meet Defendant's removal efficiencies. The parties jointly developed a testing protocol, but the Metalsort again failed to meet Defendant's requirements. On December 10, 2008, Defendant hired an independent contractor to remove the Metalsort from its facility. Defendant alleges that it did not receive any benefit from the Metalsort.

Prior to the filing of the present action, Maser Canada sued Plaintiff in the Ontario Superior Court of Justice. In the Canadian lawsuit, Maser Canada seeks to recover $5,000,000 in damages from Plaintiff for lost profits and consequential damages. The alleged harms in that suit are the same, verbatim, as those Defendant raises in its Counterclaim. The Amended Statement of Claim also states, "the breach of contract was committed in Ontario and that damages were sustained in Ontario." (Doc. No. 14-1.) Maser Canada has subsequently initiated bankruptcy proceedings in Canada. (Doc. No. 14-2.) RSM Richter Inc. ("RSM") is the trustee in those proceedings. (*Id.*) Defendant asserts that RSM intends to intervene in the instant action and, if allowed to do so or as a condition of being allowed to do so, RSM will voluntarily dismiss Maser Canada's Canadian lawsuit against Plaintiff. To date, there has been no motion for RSM to intervene, and the Court is not aware of a dismissal of the Canadian lawsuit.

Plaintiff initiated this suit for breach of contract on June 29, 2009. (Doc. No. 1.) Plaintiff filed an Amended Complaint on September 30, 2009. (Doc. No. 9.) On October 18, 2009, Defendant filed an Answer and Counterclaim denying Plaintiff's claims, asserting the affirmative defense of estoppel, and bringing a counterclaim for a monetary judgment for lost profits and

consequential damages. (Doc. No. 13.) Specifically, Defendant's Counterclaim asserts that Defendant has incurred significant downtime and lost production because of the modification of its process to accommodate the Metalsort and because of the testing, inadequate operation, and removal of the Metalsort. (Doc. No. 13 ¶ 72.) Defendant also claims that it has incurred lost profit as a result of its inability to separate its material for sale to third parties and costs associated with the storage of the material. (*Id.*) Defendant seeks a monetary judgment in the amount of $5,000,000 with attorneys fees and costs. (*Id.* at 14.)

Plaintiff filed a Motion to Dismiss the Counterclaim on November 3, 2009. (Doc. No. 14.) Defendant filed a Response to Plaintiff's Motion on December 18, 2009 (Doc. No. 23), to which Plaintiff filed a Reply on July 27, 2010 (Doc. No. 26).

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* However, a court should grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001).

When ruling on a motion to dismiss, the Court must construe the complaint liberally in the moving party's favor "and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). A court should not

dismiss a well-pleaded complaint "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556. Finally, the moving party has the burden of proving that the complaint does not state a claim. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008).

## III. ANALYSIS

Plaintiff moves to dismiss Defendant's Counterclaim. Plaintiff asserts that Defendant has not shown and cannot show that it may bring claims for injuries that Maser Canada, its wholly-owned subsidiary, is already asserting in an existing lawsuit in Canada. (Doc. No. 15 at 6.) Plaintiff argues that, moreover, Defendant cannot assert a claim for consequential damages because they are prohibited by a limiting provision of the Agreement. (*Id.*)

As a preliminary matter, the Court must decide what law should apply in this case. Here, the Agreement does not contain a choice of law provision, and the parties now dispute whether international or domestic contract law should govern this dispute. Defendant's Counterclaim contends that the 1980 United Nations Convention on Contracts for the International Sale of Goods (CISG) supplies the relevant law because the parties' principal places of business are in Canada and the United States, both of which have adopted the CISG. (Doc. No. 13 ¶ 74.) Plaintiff contends that the CISG is not applicable because the execution of the Agreement occurred entirely in the United States between two companies incorporated in the United States. (Doc. No. 15 at 10.)

The CISG is applicable to "contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." Convention on Contracts for the International Sale of Goods, art. 1 § 1(a), 1489 U.N.T.S. 3. The parties do not dispute that both the United States and Canada are signatories, or "Contracting States," to the

CISG; however, Plaintiff asserts that the CISG does not apply because Defendant is incorporated in Delaware and signed the Agreement in Massachusetts (Doc. No. 15 at 10).

The Court finds that the CISG does not apply to this action, regardless of the location of the parties' businesses. Article 4 states, "This Convention governs only the formation of the contract of sale and the rights and obligations of the seller and the buyer arising from such a contract." It goes on to explicitly exclude from its coverage "the validity of the contract or of any of its provisions." Accordingly, the validity and enforceability of a contractual clause is decided under domestic law, not the CISG. *Berry v. Ken M. Spooner Farms, Inc.*, No. C05-5538FDB, 2006 WL 1009299, *2 (W.D. Wash. 2006), *rev'd on other grounds*, 254 F. App'x 646 (9th Cir. 2007) (citing *Geneva Pharmaceuticals Tech. Corp. v. Barr Labs., Inc.*, 201 F. Supp. 2d 236, 281 n.26 (S.D.N.Y. 2002), *rev'd on other grounds*, 386 F.3d 485 (2d Cir. 2004)). Thus, the enforceability of the Agreement's limitations on consequential damages provision is not governed by the CISG. The Court must therefore determine what law to apply in its place.

The parties have not presented arguments on what domestic law should apply where the CISG does not. When a federal court has jurisdiction over an action based on the diversity of the parties, the court must apply the substantive law of the state in which it sits, including the state's conflicts of laws rules. *Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Tennessee courts apply the *lex loci* rule to contract claims, so that a claim is governed by the law of the state where the contract was made and delivered. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.3d 465, 476 (Tenn. 1973). There is an exception to the *lex loci* rule when the parties envision performance in accordance with another state's laws; in other words, whether the contract was made "in good faith with reference to the law of some other state" or "with a view to" the other

state. *In re Estate of Davis*, 184 S.W.3d 231, 234-35 (Tenn. Ct. App. 2004) (citing *Ohio Cas. Ins. Co.*, 493 S.W.3d at 466-67).

This Court has previously followed the *lex loci* rule and applied Tennessee law when the plaintiff was incorporated in Tennessee and the contract in question was issued and delivered in Tennessee. *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 972 n.3 (M.D. Tenn. 2008). Plaintiff is a Tennessee corporation and issued the Agreement in Tennessee, where Defendant delivered it signed. Although Defendant's representative signed the Agreement in Massachusetts, there is no evidence that the parties created the Agreement with reference to the laws of Massachusetts or any other state, nor does the Agreement refer to another state. Further, both parties cite Tennessee law in their briefings; Defendant, the non-moving party, does not cite the law of any other state. *See Topmost Chemical and Paper Corp. v. Nationwide Ins. Co.*, No. 01-2588V, 2002 WL 1477880, *3 (W.D. Tenn. Apr. 23, 2002) (applying Tennessee law where a contract contained no choice of law clause and both parties cited to Tennessee state court decisions or federal court decision interpreting Tennessee law). The Court will therefore apply Tennessee law.

A. *Defendant's Right to Bring Its Counterclaim*[2]

Plaintiff first argues that Defendant does not have a right to bring its Counterclaim because Maser Canada suffered the alleged injuries. "'[T]he proper party to bring a claim on behalf of a corporation is the corporation itself.'" *House v. Estate of Edmondson*, 245 S.W.3d 372, 381 (Tenn. 2008) (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 531-32 (1984)). As Maser Canada is Defendant's wholly-owned subsidiary, Defendant is its sole shareholder; however, even when a corporation has one sole shareholder, the shareholder may not bring suit

---

[2] The Court notes that the parties have framed this issue as one of Defendant's "standing." However, this is not in fact a matter of Defendant's Article III standing, but rather a question of the rights of parent corporations and their relationships to their subsidiaries under corporate law. The Court will address the issue as such.

on behalf of the corporation. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 863 (Tenn. Ct. App. 2006). A court in this Circuit explicitly extended this principle to parent corporations and held that a parent corporation could not bring suit for diminution in the value of its capital stock because of injury that was actually incurred by its subsidiary. *Media Gen., Inc. v. Tanner*, 625 F. Supp. 237, 244 (W.D. Tenn. 1985) (citing *Warren v. Mfrs. Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985)). Another district court has stated that "injury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as a real party in interest on a parent corporation." *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916 (D. Kan. 1997) (citing *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 (10th Cir. 1985)).

Defendant does not argue that it brings this claim on behalf of Maser Canada for injuries that Maser Canada solely suffered. Rather, Defendant asserts that it also suffered the alleged injuries. Defendant argues that it can assert a claim to redress the same injuries because it has a "unity of interest" with its wholly owned subsidiary such that both companies suffered the loss caused by the Metalsort's failure to perform at the desired level. (Doc. No. 23 at 6-7.) Law addressing the specific issue of a parent corporation's right to bring suit for injuries that it shares with its subsidiary corporation is scant, both within and outside of Tennessee. Defendant cites *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984), in which the Supreme Court commented:

> A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. . . . [T]he subsidiary acts for the benefit of the parent, its sole shareholder. . . . [I]n reality a parent and a wholly owned subsidiary always have a unity of purpose or a common design. They share a common purpose whether or not the parent keeps a tight rein over the subsidiary.

(Doc. No. 23 at 6-7.) The Court's comments were made in the course of discussing whether a parent and subsidiary corporation can form an illegal agreement in violation of federal antitrust law. *Copperweld Corp.*, 467 U.S. at 771-72. The Supreme Court concluded that the interests of parents and subsidiary corporations were so intertwined that it would be impossible for them to have an anti-competition agreement between them. *Id.*

As Defendant noted, the Tennessee Supreme Court cited *Copperweld* in finding that a parent and subsidiary corporation are the same entity for tortious interference purposes. *Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 781-82 (Tenn. 2000). The court held that "a parent corporation has a privilege pursuant to which it can cause a wholly-owned subsidiary to breach a contract without becoming liable for tortiously interfering with a contractual relationship." *Id.* at 780. Defendant asserts that the Tennessee Supreme Court "disregarded the formality of the distinction between a parent and a wholly-owned subsidiary" in favor of acknowledging their "unity of interest," and urges this Court to do the same. (Doc. No. 23 at 7.)

To the Court's knowledge, tortious interference is the only context in which Tennessee courts have disregarded the formal distinction between parent and subsidiary corporations. In fact, under Tennessee law, "[t]here is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors *or affiliated corporations*." *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005) (emphasis added). This Court cannot conclude, as Defendant suggests, that Tennessee courts would extend the reasoning in *Waste Conversion Systems* to confer the right for a parent corporation to bring suit for the same injuries which its wholly-owned subsidiary allegedly suffered.

The Court finds, however, that it also cannot conclude, under the motion to dismiss standard and drawing all reasonable inferences in favor of Defendant, that Defendant has no plausible claim under any set of facts. In *Classic Communications*, even after finding that a parent company generally does not have standing to bring suit for injuries suffered solely by its subsidiary, the District of Kansas determined that it could not conclude on a motion to dismiss that the claiming party had no enforceable right under the applicable law. *Classic Commc'ns*, 956 F. Supp. at 916. This Court is even more reluctant to do so, as Defendant alleges overlapping damages rather than damages suffered solely by its subsidiary. In their respective litigations, Defendant and Maser Canada would each have to establish that they separately suffered the alleged consequential damages. The Court cannot conclude at this stage that Defendant would be unable to do so under any set of facts. The Court therefore finds that, as the District of Kansas stated, there is "insufficient factual development at this stage of litigation" to properly dismiss Defendant's Counterclaim on the basis that it claims the same injuries as its subsidiary corporation. *Id.* at 917.

*B. The Agreement's Limitation on Consequential Damages*

Under the Uniform Commercial Code, as adopted in Tennessee, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Tenn. Code Ann. § 47-2-719(3). Defendant must thus establish that the exclusion contained in the Agreement is unconscionable. *Fifth Third Leasing Co. v. Cherokee Pontiac, Buick, Olds, GMC Trucks, LLC*, No. E-2011-01628-COA-R3-CV, 2002 WL 407224, *2 (Tenn. Ct. App. Mar. 13, 2002). Such unconscionability occurs "'when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so repressive that no reasonable person would make them on the one hand, and no honest and fair person would

accept them on the other.'" *Id.* (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). The Tennessee Court of Appeals has established that "'[w]hether a contract term is unconscionable is a question of law, and a presumption of permissible dealings exists between commercial parties.'" *Id.* (quoting *Haun*, 690 S.W.2d at 872). When parties to a contract have equal bargaining power, courts are unlikely to find unconscionability. *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) (enforcing a contract provision limiting remedies when the parties had equal bargaining power and the party seeking to avoid the provision did not allege other facts of unconscionability).

Defendant's Counterclaim alleges that Plaintiff made a guarantee about the Metalsort's capabilities, which the Metalsort did not meet (Doc. No. 13 ¶ 37), and argues that the limiting provision is not a part of the parties' bargain because of its fundamental inconsistency with Plaintiff's guarantee (Doc. No. 23 at 8). The Court fails to understand how a provision limiting consequential damages could be "inconsistent" with representations about a machine's functionality. In fact, the two seem entirely consistent; a manufacturer will make a guarantee regarding its product, but seek to limit its liability in the event that the product does not perform as expected. Defendant does not cite any law in support of its assertion that this inconsistency undermines the validity of the limiting provision.

Defendant also alleges that Plaintiff is equitably estopped from invoking a limitation of liability because Plaintiff made misrepresentations and false claims about the Metalsort's capabilities. (Doc. No. 13 at 4.) On a motion to dismiss, the Court is not required to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Equitable estoppel is a mechanism "to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by

-11-

other rules of law, unless prevented by an estoppel." *Estate of Baker v. King*, 207 S.W.3d 254, 263 (Tenn. Ct. App. 2006). Defendant again invokes, without legal support, the alleged inconsistency between the limitation on consequential damages and Plaintiff's guarantee regarding the Metalsort's suitability. (Doc. No. 23 at 9.)

The Court finds that Defendant has not alleged facts supporting findings of either unconscionability or estoppel regarding the Agreement's limitation on consequential damages. Defendant does not allege that it was unconscionably induced to accept the limitation on damages. There is no indication that the parties had unequal bargaining power in forming the Agreement. The limiting provision does not "shock the judgment" of the Court as manifestly unfair, *Haun*, 690 S.W.2d at 872, or strike the Court as creating an "unconscientious and inequitable" result in favor of Plaintiff, *Estate of Baker*, 207 S.W.3d at 263. Thus, the Court finds that the Agreement's limitation on consequential damages must be enforced. Because the provision precludes Plaintiff's liability for all consequential damages relating to the Metalsort's performance, Defendant's Counterclaim fails to state a claim on which relief can be granted and should be dismissed under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion. Defendant's Counterclaim is hereby **DISMISSED**.

It is so ORDERED.

Entered this the ___18th___ day of July, 2011.

                                                JOHN T. NIXON, SENIOR JUDGE
                                                UNITED STATES DISTRICT COURT